**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Silas O. THOMPKINS, Defendant–Appellee.**

No. 93–1166.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1993.

Decided July 15, 1993.

**630**

Richard Monroe, Springfield, MO (Gregory K. Johnson, on brief), for plaintiff-appellant.

Roger Jones, Springfield, MO, for defendant-appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

BOGUE, Senior District Judge.

The United States appeals from the district court's ruling suppressing cocaine which was seized from a suitcase ostensibly belonging to defendant Silas Thompkins. For the reasons that follow, we reverse the district court's decision to suppress the cocaine.

The following factual summary is derived from the transcript of the suppression hearing. Mr. Thompkins was riding a Greyhound bus which left Los Angeles, California on the afternoon of October 24, 1992. During a stop in Springfield, Missouri on October 26, DEA agent Carl Hicks, who was looking for drug couriers, boarded the bus and took an interest in Thompkins. Hicks identified himself and asked if he could visit with Thompkins.

---

* The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

According to Hicks, Thompkins appeared nervous. On request, Thompkins produced a Pennsylvania license bearing his name and a ticket reflecting bus travel from Los Angeles to Pittsburgh, Pennsylvania. Thompkins told Hicks that he had been working in California for the last four months, but declined to say where. Thompkins allowed Hicks to search his jacket and a bag he was carrying. Neither contained drugs. Since Thompkins was not carrying extra clothing, Hicks asked whether he had any suitcases checked into the bus's baggage compartment. Thompkins replied in the negative. Hicks thanked him for cooperating, got off the bus, and went to the luggage compartment—where he intended to see whether Thompkins really was traveling without checked baggage. Thompkins also got off the bus, watched Hicks proceed to the luggage compartment, then went inside the terminal.

Agent Hicks located a suitcase with the word "Pittsburgh" on the identification tag, but no name. He took the bag into the snack bar inside the bus station, where Thompkins was now seated, and placed it on the table in front of him. Thompkins admitted that the bag was his, and said he had lied about not having luggage because he had been surprised when confronted on the bus. Hicks got permission to search the suitcase. There were no drugs in the bag, but there was a plane ticket showing travel from Pittsburgh to Los Angeles on October 23, 1992, issued in the name of William Thompson; and a hotel receipt from that same night issued to Silas Thompkins. While Hicks was perusing the bag, Thompkins got up and ran out of the station—leaving the suitcase behind. Hicks gave chase and commanded Thompkins to stop, reiterating his authority as a police officer. While Thompkins was trying to scale a chain-link fence, Hicks intercepted him and pulled him off. A struggle ensued, during which Hicks informed Thompkins that he was under arrest for assaulting a federal officer. Thompkins tried unsuccessfully during the fracas to stab Hicks with a pencil. Finally, with the help of bystanders, Hicks subdued and handcuffed Thompkins and led him back to the bus station.

Meanwhile local police, including Officer Brady Stark, arrived at the bus station. Hicks went to the snack bar to retrieve the suitcase, and Stark checked the bus's baggage compartment for more luggage belonging to Thompkins. Stark found another suitcase checked to Pittsburgh, with a claim check number consecutive to the bag earlier identified as Thompkins'. The identification tag said "Pittsburgh, Pennsylvania" in handwriting that Brady thought appeared similar to that on Thompkins' first bag. The bus driver informed Hicks that Thompkins was the only passenger ticketed to Pittsburgh. Hicks then approached Thompkins with the second bag and advised him of his constitutional rights. Thompkins agreed to talk with the officers, and in response to questioning he disclaimed ownership of the suitcase. He said he had no objection to them searching the bag for drugs since it did not belong to him. The officers opened the suitcase and found a kilogram of cocaine inside. They then took Thompkins to the U.S. Marshal's office, where they searched him. In his pocket they found keys that fit the lock on the suitcase which had contained the cocaine.

On November 20, 1992, Thompkins was indicted for possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1)) and assaulting a federal officer (18 U.S.C. §§ 111, 1114). Thompkins moved to suppress the cocaine, arguing that it was procured through an unlawful seizure because Hicks had no probable cause to chase him down when he ran from the bus station. At a hearing on the motion to suppress, Hicks and Stark both gave their accounts of the above-recited facts. Thompkins offered no evidence, but his counsel cross-examined the officers. The trial court granted the motion—not addressing Thompkins' seizure argument—but expressing concern that the suitcase might have belonged to an innocent traveler and saying that the government had no right to open it. The United States appeals, seeking reversal of the district court's decision to suppress the cocaine.

We review the district court's decision to grant Thompkins' motion to suppress under a clearly erroneous standard. Therefore, reversal is proper only if the decision was

"unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991) (citations omitted). Because of the limited record in this matter it is difficult to ascertain exactly what legal precedent the district court relied on; however, under the circumstances we conclude that its decision was based on an erroneous interpretation of applicable law.

■ A review of Thompkins' motion to suppress, as well as the transcript of the hearing on the motion, indicates that he sought suppression on the grounds that the search of the second suitcase was tainted by his unlawful seizure. He did not (and does not on appeal) dispute the fact that he consented to the search and/or attempted to abandon the suitcase. However, the district court does not appear to have relied on the grounds asserted by Thompkins for suppression. As evidenced by his lengthy colloquy with counsel for the United States after the testimony had been presented, the district judge was concerned that the bag might have belonged to an innocent traveler whose luggage should not be ransacked by government agents. He apparently concluded that the suitcase was not abandoned but merely unidentified at the time it was searched. Therefore he did not reach any conclusions on the issues of illegal seizure, consent, or standing—but simply stated that the government had "absolutely no right to open [the suitcase]."

Because the district court's conclusion was premised on its apparent finding that the suitcase was not abandoned, we feel compelled to address the issue of abandonment— notwithstanding the fact that Thompkins continues to rely solely on his unlawful seizure argument to support affirmance.

■ Like this entire matter, we review the district court's ruling as to abandonment on a clearly erroneous standard. *United States v. Ruiz*, 935 F.2d 982, 984 (8th Cir.1991). In *Ruiz*, this Court heard an abandonment argument under similar facts. Upon arrival at a bus station, Ruiz had placed luggage containing drugs into the trunk of one car, then prepared to leave in another car. Police, who had been tipped as to Ruiz' arrival, stopped both cars and began questioning the occupants. Ruiz denied ownership of the luggage, and the driver of the car containing the bags allowed the officers to search them. On appeal, this Court affirmed the magistrate's ruling that Ruiz had voluntarily abandoned his privacy interest by denying ownership. The instant facts present even a more compelling argument for abandonment than those in *Ruiz*—because here Thompkins not only disclaimed ownership of the suitcase, but he then told officers to go ahead and search it. In *Ruiz* the defendant's mere disclaimer, then remaining silent while he watched the search, was held to constitute abandonment as to him. Indeed, it is clear that Thompkins did everything in his power to distance himself from the suitcase at issue here—and there is no evidence whatsoever (nor even a claim by Thompkins) to contradict the government's assertion that he had abandoned the suitcase at the time it was searched.

The district court's concern that the bag might have belonged to an innocent traveler is entirely proper. If the suitcase belonged to anyone other than Thompkins, suppression might be appropriate. However, when the search took place, the agents' suspicion was buttressed by all of the following information: 1) Thompkins was nervous when approached by Agent Hicks; 2) he claimed to have been working in Los Angeles, but did not answer when Hicks asked where he had been working; 3) he put only his destination, not his name on his luggage; 4) he had lied about not having any luggage checked; 5) he had used an assumed name on his airline ticket[1]; 6) he got up and ran during a con-

---

1. We have said that "although traveling under an assumed name is not illegal, it can be considered as a factor" in determining the existence of reasonable suspicion. *United States v. Hawthorne*, 982 F.2d 1186, 1190 n. 4 (8th Cir.1992) (citing *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

sensual search of the first suitcase [2]; 7) he resisted Hicks' efforts to stop him; 8) the second bag was labeled like the first and bore a claim number that was sequential to the one already known to belong to him; and 9) he was the only passenger on the bus ticketed to Pittsburgh. This combination of facts makes it only a very remote possibility that the suitcase might have belonged to a third party. Only Thompkins' bare on-the-spot disclaimer of ownership (which he does not now continue to assert) supported the possibility that the suitcase belonged to anyone other than him. Therefore, we conclude that the district court's finding that the agents had no right to search the suitcase was unsupported by substantial evidence.

As noted above, Thompkins does not rely on the same rationale as the district court to uphold suppression of the cocaine. Rather, his sole argument for affirmance is that he was illegally seized in violation of the fourth amendment when Hicks gave chase after he ran from the station; thus the cocaine which was found in the subsequent search must be excluded as tainted evidence.

█ A seizure occurs only when, viewing all the circumstances surrounding the incident, a reasonable person would believe that he is not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Florida v. Bostick,* ── U.S. ──, ──, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). Police pursuit of a suspect is generally not a seizure. *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). Rather, for a seizure to occur, there must be a physical application of force by the officer or submission to the officer's show of force. Merely giving chase and ordering a person to stop does not constitute a seizure (particularly when the person does not stop). *California v. Hodari D.,* 499 U.S. 621, ──-──, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991). Based on these principles it is clear

that Thompkins was not "seized" until he was grabbed by Hicks and pulled from the fence.

█ Having concluded when Thompkins' seizure occurred, we must determine whether the seizure was reasonable at the time. Not all seizures but only unreasonable seizures give rise to the exclusion of after-obtained evidence.

When Agent Hicks approached Thompkins in the snack bar with the first suitcase in hand, the encounter remained consensual until Thompkins ran and Hicks gave chase. At that moment Hicks knew the following: Thompkins was nervous when approached; he claimed to have been working in Los Angeles, but remained silent when asked where he had been working; he had written only his destination, not his name on his luggage; he had lied about not having any luggage checked; and he had used an assumed name on his airline ticket. These facts alone might not have given Hicks adequate reason to detain Thompkins, and Hicks testified that at any point up until the chase Thompkins could have gotten up and walked away. However, the added fact of Thompkins' sudden flight from the station gave rise to a legitimate suspicion that he was engaged in criminal activity. The chase amounted to a *Terry*–type stop, which "is justified if the government can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *United States v. Millan,* 912 F.2d 1014, 1017 (8th Cir.1990) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). When the chase occurred, Hicks had sufficient information to give him reasonable suspicion that criminal activity was afoot. The scuffle which followed the chase gave rise to probable cause to arrest Thompkins for assaulting a federal officer. Thus, the arrest was proper and the resultant search of the bag was not tainted by an unlawful seizure.

---

**2.** The fact that Thompkins got up and ran (leaving his luggage behind) during Hicks' search of the first suitcase—while not itself reason to arrest him—gives rise to a fair inference that he was engaged in criminal activity. *United States v. Lane,* 909 F.2d 895, 899 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 977, 112

L.Ed.2d 977 (1991) ("flight in the face of a clear showing of lawful authority supplied a reasonable suspicion that the suspect was engaged in criminal activity"); *see also United States v. Willis,* 967 F.2d 1220, 1223 (8th Cir.1992) (citing *Lane* and other cases for the same proposition).

In summary, we conclude that the suitcase containing the subject cocaine was abandoned by Thompkins at the time it was searched; and that the search was not tainted by an unlawful seizure of Thompkins' person. The order of the district court granting appellees motion to suppress is reversed and the matter remanded for further proceedings.