_____

No. 96-1501
_____

United States of America,          *
                                   *
      Plaintiff - Appellee,         *   Appeal from the United States
                                   *   District Court for the
      v.                           *   District of Nebraska.
                                   *
Gregory W. Hathcock,               *
                                   *
      Defendant - Appellant.        *


_____

                    Submitted:  September 10, 1996

                      Filed:  January 9, 1997
_____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN,
Circuit Judge.
_____

HANSEN, Circuit Judge.

      Following his conditional plea of guilty to possessing a controlled
substance with intent to distribute it, Gregory W. Hathcock appeals the
district court's[1] denial of his motion to suppress evidence obtained as a
result of an encounter he had with an officer prior to his arrest.  We
affirm.

                                  I.

      On July 1, 1994, four officers of the Omaha Police Department,
including Sergeant Mark T. Langan and Officer Mark Lang, were

_____

      [1]The Honorable William G. Cambridge, Chief Judge, United
States District Court for the District of Nebraska.

conducting surveillance of flights arriving at Eppley Airfield in Omaha, Nebraska, from the west coast. The officers were looking for individuals who were transporting drugs into Omaha. Gregory Hathcock arrived late that evening on a flight originating from the west coast and exited the plane with another individual. The officers saw the two persons walk together a few feet and then split up in the corridor. Hathcock was carrying a duffel bag and did not retrieve any luggage from the luggage carousel. He sometimes walked very quickly, trotting, and other times walked slowly. Hathcock seemed to be nervous, looking back and forth. He walked out to the taxi cab stand area, but no taxi cabs were there at the moment.

Sergeant Langan had observed Hathcock's behavior and had concluded that Hathcock met the profile of a drug courier. The sergeant followed Hathcock and approached him at the taxi cab stand area. The sergeant showed his police badge, told Hathcock his name, and informed Hathcock he was with the Narcotics Unit of the Omaha Police Department. Sergeant Langan asked Hathcock if he would mind answering a few questions, and Hathcock said he would not mind. The officer explained that he was at the airport to identify possible drug couriers arriving from the west coast and that this was his reason for wanting to talk to Hathcock. He asked whether Hathcock understood this; Hathcock replied that he did.

When asked his name, Hathcock identified himself as "Greg Johnson." Sergeant Langan asked to see Hathcock's airline ticket, and Hathcock produced a ticket issued to Greg Johnson. Langan then asked for permission to search Hathcock's duffel bag for drugs. Hathcock said that he first wanted to go to a residence at 5040 Corby Street and that Sergeant Langan could search the bag at that location in about an hour.

Sergeant Langan asked Hathcock whether he had any identification, and Hathcock replied that he did not. Langan then

asked Hathcock whether he would show the officer his wallet.  Hathcock took out his wallet.  When Langan asked whether he could look though the wallet for identification, Hathcock replied that that would be fine and handed the wallet to the officer.  Langan asked Hathcock a second time whether the wallet contained any identification, and Hathcock again said no.

Sergeant Langan searched Hathcock's wallet.  He found a traffic ticket and a medical card, both in the name of Gregory W. Hathcock.  The sergeant asked Hathcock whether his name was, in fact, Gregory Hathcock, rather than Gregory Johnson.  Hathcock admitted that his real last name was Hathcock, and that he was only flying under the name of Gregory Johnson.  Sergeant Langan then placed Hathcock under arrest for providing "false information to a police officer."  The entire exchange lasted about three minutes.

Sergeant Langan took Hathcock to the security office of the airport and ran a records check on him.  The check revealed no outstanding warrants for Hathcock.  Langan then asked Hathcock for permission to search Hathcock's duffel bag.  Hathcock told Langan he would consent, but his bag contained some fragile items.  The sergeant said he would simply stand and watch if Hathcock would unzip the bag and remove the items himself.  Hathcock agreed to this.

Hathcock unzipped his bag.  He removed and ripped up a paper label carrying the brand name "Poly."  Hathcock also took out a pair of jeans, but then shook them, put them back in the bag, and zipped it up.  Interpreting Hathcock's conduct as a denial of consent to search the bag, Sergeant Langan asked another officer to watch Hathcock and went into the hallway, where he told a third officer, Officer Mark Lang, that he was going to arrange for a drug dog to sniff Hathcock's duffel bag.  Langan left to make the arrangements.

While Langan was gone, Officer Lang entered the security office and asked Hathcock for permission to search the bag.  Hathcock picked up the bag, lifted it a short distance from the floor, and then threw it back down.  He said, "Go ahead and search it.  You're going to find what you want anyway."  (Supp. R. at 127.)  Officer Lang searched the bag and found a small amount of marijuana and a bundle of 492 grams of crack cocaine wrapped in plastic Poly tape.

Hathcock was charged under state law with possession with intent to deliver crack cocaine.  Hathcock filed a motion to suppress the crack cocaine.  The trial court granted Hathcock's motion, finding that the initial encounter was a <u>Terry</u> stop that was not based on a reasonable, articulable suspicion.

The state appealed to the Nebraska Court of Appeals.  Contrary to the trial court, the appellate court found there was reasonable suspicion to support a <u>Terry</u> stop, but further found that Sergeant Langan did not have probable cause under Nebraska state law to arrest Hathcock, because the officer was not working on "an actual criminal matter" within the meaning of section 28-907(1)(a) of the Nebraska Revised Statutes (1989) when he approached Hathcock.[2]

Following the decision of the Nebraska Court of Appeals, Hathcock was charged and indicted in federal court with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1988).  Hathcock again filed a motion to suppress the crack

---

[2]Section 28-907(1)(a) of the Nebraska Revised Statutes states:

> (1) A person commits the offense of false reporting if he or she:
> (a) Furnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter[.]

4

cocaine. At a hearing on this motion, Sergeant Langan testified that he had arrested Hathcock based on his belief that Hathcock had violated section 20-26 of the Omaha Municipal Code, which prohibits providing false information to an officer. Sergeant Langan also testified that he did not specifically tell either Officer Lang or, later, the state court prosecutor that he had arrested Hathcock on the basis of a violation of the municipal code rather than the state code.

Hathcock also presented evidence at the suppression hearing. In support of his argument that he was arrested under state (not municipal) law, he offered the opinion of the Nebraska Court of Appeals and the testimony of the technician who had processed the paperwork when Hathcock was booked into jail.

The magistrate judge[3] concluded that the crack cocaine was admissible. First, she determined that the state appellate court's decision was not dispositive on this federal constitutional question. Second, applying an objective standard to determine whether Langan had probable cause to arrest Hathcock, she found that the arrest was valid, regardless of whether Sergeant Langan's subjective intent was to arrest under state or municipal law. Finally, she found that Hathcock had voluntarily consented to Officer Lang's search of his bag. Thus, she recommended that the district court deny Hathcock's motion to suppress.

The district court adopted the magistrate judge's report and recommendation and denied Hathcock's motion to suppress. Hathcock then entered a conditional plea of guilty, reserving the right to appeal the district court's denial of his motion to suppress. He now brings that appeal.

---

[3]The Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska.

5

Hathcock first argues the initial encounter between himself and Sergeant Langan was not a consensual stop, but rather a <u>Terry</u> stop that was not supported by reasonable suspicion. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 20-27 (1968). In addressing this issue, we review the historical facts for clear error and the ultimate legal conclusions de novo. <u>Ornelas v. United States</u>, 116 S. Ct. 1657, 1663 (1996).

A consensual encounter between an officer and a private citizen does not implicate the Fourth Amendment. <u>Florida v. Bostick</u>, 501 U.S. 429, 434-35 (1991). The line between a consensual encounter and a <u>Terry</u> stop is not a bright line but depends upon the facts of the case. <u>United States v. McKines</u>, 933 F.2d 1412, 1419 (8th Cir.) (en banc), <u>cert. denied</u>, 502 U.S. 985 (1991). A consensual encounter becomes a <u>Terry</u> stop when the questioning is so "intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave." <u>Id.</u>; <u>see also</u> <u>Bostick</u>, 501 U.S. at 434-35. Circumstances that might indicate when an encounter becomes a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." <u>United States v. White</u>, 81 F.3d 775, 779 (8th Cir.) (internal quotations omitted), <u>cert. denied</u>, 117 S. Ct. 518 (1996).

Under this legal standard, we have no trouble concluding that the encounter between Langan and Hathcock at the taxi stand was consensual. Langan simply introduced himself and explained his reasons for talking to Hathcock. He displayed no weapon and made no attempt to physically limit Hathcock's mobility through any touch. The encounter took place in a public area. Although the officer did not specifically advise Hathcock of his right to walk

away, this fact alone does not elevate the encounter to a seizure, absent some other evidence of coercion or restricted freedom. United States v. Dennis, 933 F.2d 671, 673 (8th Cir. 1991). The record in this case is devoid of any evidence of threats or coercion, and the entire exchange lasted only about three minutes. Considering the totality of the circumstances, we conclude that this was a consensual encounter, not a Terry stop, until Langan arrested Hathcock for providing false information. See White, 81 F.3d at 779 ("A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area -- even if the officer has no reason to suspect the individual is involved in criminal activity -- provided the officer does not indicate that compliance with his request is required."); United States v. Thompkins, 998 F.2d 629, 633 (8th Cir. 1993) (stating defendant not seized during an encounter at a bus stop, until chased and grabbed); United States v. Robinson, 984 F.2d 911, 913 (8th Cir. 1993) (holding no seizure in train depot during cooperative, nonthreatening encounter between officer and private citizen).

When Hathcock admitted he had lied to Langan, Langan had probable cause, under Omaha Code § 20-26, to arrest Hathcock.[4] For purposes of our Fourth Amendment analysis, it is of no moment whether Langan intended to arrest Hathcock under state or municipal law, for the circumstances of the arrest, viewed objectively, indicate that probable cause for the arrest existed under the municipal law. See Whren v. United States, 116 S. Ct. 1769, 1774 (1996); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir.), cert. denied, 115 S. Ct. 647 (1994). For the same reason,

---

[4]Hathcock argues for the first time that the Omaha ordinance is unconstitutionally vague and overbroad. We do not address these issues, because he waived them when he failed to submit them in the first instance to the district court. Kramer v. Kemna, 21 F.3d 305, 308 (8th Cir. 1994).

7

Hathcock's argument that the arrest was pretextual, and therefore unconstitutional, fails.

Finally, Hathcock argues that the district court erred in finding that he voluntarily consented to the search of his duffel bag. "[T]he question of whether a consent to search was in fact `voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). We have set out some individual characteristics that aid in the determination of whether consent is voluntary: (1) age; (2) general intelligence and education; (3) whether an individual was under the influence of drugs, alcohol or otherwise; (4) whether an individual was informed of his or her Miranda rights prior to the consent; and (5) whether an individual had experienced prior arrests so that he or she was aware of the protections the legal system affords to suspected criminals. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). We also look at the environment in which individuals give consent, considering (1) the period of time the individual was detained or questioned; (2) whether the police threatened, physically intimidated, or punished the individual; (3) whether police made promises or misrepresentations, upon which the individual relied; (4) whether the individual was in custody or under arrest at the time consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether the individual stood by silently while the search occurred. Id. We review the district court's determination that Hathcock voluntarily consented to the search of his bag under the clearly erroneous standard. United States v. Heath, 58 F.3d 1271, 1276 (8th Cir.), cert. denied, 116 S. Ct. 240 (1995).

The district court did not clearly err in concluding that Hathcock's consent was voluntary. Hathcock was a sober, 23-year old male with three years of high school education. Although he was in the security office, a secluded spot, at the time of his

8

consent, he had been detained for only about three minutes at the taxi stand. The record contains no evidence of coercion, intimidation, or misrepresentation by Officer Lang in obtaining Hathcock's consent. Hathcock clearly granted his consent, apparently believing the officers would inevitably detect the illegal substances. We agree with the district court that, in view of the totality of the circumstances, this consent was voluntary.

## III.

The district court properly denied Hathcock's motion to suppress the evidence of drugs found in his duffel bag, because the initial encounter was consensual, the subsequent arrest was supported by probable cause, and the ultimate search of Hathcock's bag was a result of Hathcock giving his voluntary consent. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9