# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2251

_____

United States of America,             *
                                          *

            Appellee,      *   Appeal from the United States
                                     *   District Court for the District
      v.                  *   of South Dakota.
                                     *

Ervey Hernandez-Hernandez,   *
                                     *

          Appellant.     *

_____

Submitted:  December 16, 2003
Filed:  September 29, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Ervey Hernandez-Hernandez was a passenger in a car stopped for a minor traffic violation. The trooper decided to question Hernandez-Hernandez and the other passengers about their immigration status after he determined they did not speak English. Hernandez-Hernandez made incriminating statements to the trooper through the English-speaking driver, to Border Patrol agents during an un-<u>Mirandized</u> telephone call during the traffic stop, and to the Immigration and Naturalization Service (INS) after he was in custody and after receiving <u>Miranda</u> warnings. The

district court[*] suppressed the statements to the trooper and to the Border Patrol because the questioning exceeded the scope of the traffic stop and violated Miranda. The court concluded the taint of those violations was not present in the postwarning admissions to the INS, however, and thus admitted those statements. Hernandez-Hernandez then conditionally pleaded guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a). Hernandez-Hernandez appeals challenging the district court's partial denial of his motion to suppress. We affirm.

At about 4:00 p.m. on November 20, 2002, a South Dakota trooper saw a vehicle traveling eastbound on I-90 with objects hanging from the rear view mirror in violation of South Dakota law. The trooper stopped the vehicle and issued a warning ticket to the driver. During the stop, the driver told the trooper that the front seat passenger owned the vehicle, and that he understood English, but that the passengers in the rear seat did not. When the trooper tried to communicate with the owner, the owner said he could not speak English, and the trooper became suspicious. With the driver's help in interpreting, the trooper learned the two back seat passengers, including Hernandez-Hernandez, were "working on" their immigration status. The trooper called Border Patrol, who spoke with the passengers in Spanish on the telephone. Border Patrol then told the trooper the passengers were in the United States illegally and should be detained. The trooper took the passengers into custody and transported them to the county jail. On November 25, 2002, Hernandez-Hernandez was transferred from the jail to an INS office for an interview about his right to remain in the United States. Before speaking with Hernandez-Hernandez, the INS checked his fingerprints and learned they matched those of a person by the same name who had been deported earlier.

---

[*]The Honorable Lawrence Piersol, Chief Judge, United States District Court for the District of South Dakota.

At the interview, an INS agent identified himself using his credentials. He was unarmed and wearing plain clothes. The agent asked Hernandez-Hernandez whether he spoke English, and Hernandez-Hernandez stated he did not. The agent then read Hernandez-Hernandez his <u>Miranda</u> rights in Spanish. After the agent stated each right, he asked Hernandez-Hernandez whether he understood. Hernandez-Hernandez stated he did. Hernandez-Hernandez signed the advice of rights form, which listed the rights in both English and Spanish. The agent then asked Hernandez-Hernandez several questions in Spanish. In response, Hernandez-Hernandez stated he had been deported six or seven months earlier, and had reentered the United States illegally a couple of months later.

The district court denied Hernandez-Hernandez's motion to suppress his statements to the INS agent because the taint of the illegal detention was sufficiently purged when, five days after the traffic stop, the INS officer read Hernandez-Hernandez his <u>Miranda</u> rights before Hernandez-Hernandez admitted he reentered the country illegally after deportation. We must affirm the denial of a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made. <u>United States v. Rodriguez-Hernandez</u>, 353 F.3d 632, 635 (8th Cir. 2003).

Statements that result from an illegal detention are not admissible. <u>United States v. Ramos</u>, 42 F.3d 1160, 1164 (8th Cir. 1994). The causal chain between an illegal arrest and a statement given later is broken, however, "if the statement is 'sufficiently an act of free will to purge the primary taint.'" <u>Id.</u> (quoting <u>Wong Sun v. United States</u>, 371 U.S. 471, 486 (1963)). "The giving of <u>Miranda</u> warnings, followed by the making of a voluntary statement, does not, in and of itself, mandate a statement's admissibility." <u>Id.</u> Instead, to decide whether a confession is the product of a free will, courts consider <u>Miranda</u> warnings, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and

particularly, the purpose and flagrancy of the official misconduct.  Id.   Hernandez-Hernandez contends the Government failed to carry its burden to show he effectively waived his Miranda rights and that his admissions to the INS agent were voluntary and an act of free will.  United States v. Yousif, 308 F.3d 820, 830 (8th Cir. 2002).

Applying the Ramos factors, the district court concluded the admissibility of Hernandez-Hernandez's statements to the INS agent was "an extremely close call." The court found Miranda warnings were properly given and waived.  The fact the statement was given five days after the initial illegal detention gave Hernandez-Hernandez plenty of time to contemplate his situation and reconsider his decision to confess.  At the INS interview, Hernandez-Hernandez was faced with an unarmed immigration official in plain clothes while during his Border Patrol confession he was in a trooper's patrol car with a barking drug dog.  Although the trooper's conduct during the traffic stop weighed against admissibility of the confession, the court concluded the other factors outweighed the trooper's flawed performance.  See Yousif, 308 F.3d at 831 (district court committed clear error in admitting evidence when "little time elapsed" between illegal detention and consent to search); Ramos, 42 F.3d at 1164 (evidence admissible when the arrest and consent were close in time, and there were no intervening circumstances, but the officer's conduct was in good faith and the violation of Terry was not flagrant).

After the district court decided this case, the Supreme Court decided Missouri v. Seibert, 124 S. Ct. 2601 (2004).  In Seibert, the Court condemned a two-step interrogation technique in which police deliberately failed to provide Miranda warnings in the hope that the suspect's unwarned statements would loosen her tongue in a later interview conducted after Miranda warnings were given.  Id. at 2605. Police had intentionally violated Miranda by questioning Seibert at the police station about a murder without first advising her of her rights.  Id. at 2606.  After Seibert made an incriminating statement, the police gave her a twenty-minute coffee break. Id.  When the interrogation resumed, the police advised her of her rights and obtained

her waiver of them.  Id.  An officer then confronted Seibert with her earlier admission and elicited a confession that was used to convict her.  Id.  The Court held that the question-first technique undercuts Miranda's goal of reducing the chances of admitting a coerced confession, and in the suspect's situation, the warnings were unlikely to serve their intended purpose.  The Court declared the midstream recitation of warnings after the interrogation had begun and an unwarned confession had been obtained could not effectively comply with Miranda's constitutional requirement, and thus, the postwarning statements were inadmissible.  Id. at 2605.

In its opinion, the Court distinguished its earlier decision in  Oregon v. Elstad, 470 U.S. 298 (1985), which held a suspect who has answered inadvertently unwarned, uncoercive questions may validly waive his rights and provide an admissible statement after being warned.  In Elstad, the defendant had made an initial statement in his home, was taken to the police station, given Miranda warnings, then admitted his involvement in a crime.  Id. at 301.  In contrasting between Elstad and the situation in Seibert, the Court in Seibert listed several facts, similar to those we listed in Ramos, that bear on whether Miranda warnings delivered midquestioning can be effective: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.  Seibert, 124 S. Ct. at 2612.  Because a reasonable person in Elstad's shoes could have seen the station house questioning as a new and distinct experience from the earlier, unwarned questioning in his home, the station house Miranda warnings could have been viewed as presenting a genuine choice whether to follow up on the earlier admission.  Id.

Our case is more like Elstad than Seibert.  It does not appear that the trooper, Border Patrol, and INS used a multi-step interrogation in "a calculated way to undermine the Miranda warning."  Id. at 2616 (Kennedy, J., concurring in the

judgment). The failure of the trooper and the Border Patrol officer to read Hernandez-Hernandez his rights does not seem to have been "an intentional withholding that was part of a larger, nefarious plot." Reinert v. Larkins, 379 F.3d 76, 91 (3d Cir. 2004).

In any event, application of the Seibert factors in this case results in the conclusion that the Miranda warnings given by the INS agent to Hernandez-Hernandez were effective enough to accomplish their purpose. Seibert, 124 S. Ct. at 2612. As for the completeness and detail of the questions and answers in the first round of questioning, we have no record of the questions asked by the Border Patrol agent, but know from the transcript of the traffic stop that the passengers responded briefly in a few sentences and gave biographical information. The content undoubtedly overlapped somewhat. Nevertheless, the INS questioning was conducted five days after the initial questioning, a much longer delay than the twenty-minute break between questioning sessions condemned in Seibert, and there is no evidence Hernandez-Hernandez was questioned or coerced during those five days in jail. Further, the INS questioning was conducted at the INS office, not at the scene of the first round of questioning, and was conducted by an INS agent who had no involvement in the earlier questioning. Finally, the INS agent did not treat his questioning as continuous with the earlier questioning during the traffic stop. See id. The different methods and distant timing of the interrogations do not indicate intentional, calculated conduct by the authorities. See United States v. Aguilar, No. 03-3892, 2004 WL 2026780, at *5 (8th Cir. Sept. 13, 2004). Since a reasonable person in Hernandez-Hernandez's situation could have viewed the questioning at the INS office as a new and distinct experience from the earlier, unwarned questioning at the traffic stop, Hernandez-Hernandez could have viewed the Miranda warnings at the INS office as giving him a real choice. Seibert, 124 S. Ct. at 2612.

Because the lapse in time, change in location, and change in the interrogating personnel intervened between the unwarned questioning and Hernandez-Hernandez's

postwarning statement, <u>id.</u> at 2613 (Breyer, J., concurring), we conclude his postwarning statement to the INS agent is admissible. We thus affirm the district court's partial denial of Hernandez-Hernandez's motion to suppress.

————————————————————