# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3867

_____

United States of America,

       Appellant,

     v.

Oscar Flores-Sandoval, also known as
Armando Polanco-Diaz, also known as
Daniel Sanchez-Rodriguez,

       Appellee.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: June 21, 2005
Filed: September 6, 2005

_____

Before RILEY, BOWMAN, and BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

We must decide whether the United States Immigration and Customs Enforcement (ICE)[1] may take custody of a person and fingerprint him without any

---

[1]ICE is the investigative arm of the United States Department of Homeland Security and includes the investigative, detention and removal, and intelligence functions of the former Immigration and Naturalization Service (INS). News Release, U.S. Immigration and Customs Enforcement, ICE Announces Agency Reorganization Plan; Interim Headquarters and Field Structure Detailed (May 16, 2003), at http://www.ice.gov.htm.

admissible reason to believe the person is an illegal alien. We conclude that such a custodial detention without justification offends the Fourth Amendment, and therefore, the fingerprints and statements obtained as a result of the detention must be suppressed. We affirm the District Court.[2]

## I.

Appellant Oscar Flores-Sandoval was taken into custody on July 13, 2003, by local law-enforcement officers in Elk Point, South Dakota. The circumstances of his initial arrest are curiously unavailable and therefore not included in the record. According to Flores-Sandoval's original motion to suppress, local law-enforcement officers in Elk Point were questioning Flores-Sandoval, and because he primarily speaks Spanish, the officers called an agent of the United States Border Patrol to act as an interpreter. In the process, Flores-Sandoval allegedly admitted to the Border Patrol agent that he was in the country illegally. There is no indication Flores-Sandoval received a <u>Miranda</u> warning from the police or the Border Patrol during this custodial encounter. In any event, Flores-Sandoval was placed in the Union County Jail without being charged. Instead, he was the subject of a civil administrative detainer issued by the Border Patrol pursuant to 8 C.F.R. § 287.7 (2005). The Border Patrol then notified ICE Agent Tracy Warner that Flores-Sandoval was being detained as a possible illegal alien. Warner directed ICE detention and removal personnel to transport Flores-Sandoval from the Union County Jail to the ICE office in Sioux Falls, South Dakota. That transportation occurred the next day, after Flores-Sandoval spent the night in jail.

---

[2]The Honorable Lawrence J. Piersol, Chief Judge, United States District Court for the District of South Dakota, adopting the report and recommendations of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

When Flores-Sandoval arrived at the ICE office in Sioux Falls, the setting in the office was relaxed, informal, and others were present, but Flores-Sandoval was still in custody and was not free to leave. Warner scanned electronic fingerprints of Flores-Sandoval's index fingers using an automated fingerprint identification system. The system searched ICE records to determine if Flores-Sandoval had ever been arrested or deported by the immigration service or had attempted to enter the country illegally. The system indicated that Flores-Sandoval previously had been deported as an alien. After learning this, Warner read Flores-Sandoval his Miranda rights using the Spanish language. Flores-Sandoval then waived his Miranda rights and admitted he previously had been deported. At that point, Warner took a full set of Flores-Sandoval's fingerprints in ink and retrieved his alien registration file. Flores-Sandoval was subsequently indicted under 8 U.S.C. § 1326(a) (2000) for re-entry after deportation.

Following his indictment, Flores-Sandoval moved to suppress the statements he made after he was taken into custody by local law-enforcement officers in Elk Point and the statements and fingerprints obtained by Warner, arguing that his detention was illegal and that the evidence obtained by Warner was fruit of the poisonous tree. The District Court found that the government had not met its burden to show the initial detention by Elk Point law-enforcement officers was lawful, and therefore, the court held that any evidence obtained as a result of that detention was tainted. Accordingly, the District Court suppressed Flores-Sandoval's alleged statement to the Border Patrol that he was an illegal alien. Finding no relevant intervening circumstances between Flores-Sandoval's initial detention and the taking of his fingerprints by ICE, the District Court held that "[t]here is nothing about sitting in jail that sufficiently purges the primary taint of the illegal arrest." Report and Recommendation of Sept. 14, 2004, at 5 (Simko, J., as adopted by Piersol, C.J.). Consequently, the District Court also suppressed the evidence thereafter obtained by ICE, including Flores-Sandoval's fingerprints and the admission that he previously had been deported. The government appeals.

## II.

In reviewing the District Court's decision to suppress the evidence, we review its findings of fact for clear error and its conclusions of law de novo. United States v. Guevara-Martinez, 262 F.3d 751, 753 (8th Cir. 2001). The question at the heart of this case is whether ICE's detention of Flores-Sandoval was constitutional, because we must exclude any evidence "obtained by exploitation of [an unlawful detention] instead of by means sufficiently distinguishable to be purged of the primary taint." Id. at 755 (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)) (internal quotation marks omitted).

On appeal, the government asserts that ICE's detention of Flores-Sandoval was constitutional because his admission to being an illegal alien, allegedly made to the Border Patrol, gave ICE a proper basis to detain him pursuant to 8 U.S.C. § 1357(a) (2000). We disagree. "Statements that result from an illegal detention are not admissible." United States v. Hernandez-Hernandez, 384 F.3d 562, 565 (8th Cir. 2004). The giving of a Miranda warning may, in some cases, break the causal chain between the illegal arrest and the statement, thereby rendering the statement admissible. See id. (quoting Wong Sun, 371 U.S. at 486). The government, however, bears the burden of showing the admissibility of the statement, i.e., that a defendant waived his Miranda rights and made a free and voluntary confession. See id. As the District Court determined, the circumstances of Flores-Sandoval's initial detention and statement to the Border Patrol that he was an illegal alien are not in the record, and there was no showing that he received a Miranda warning before he made the statement. Thus, even though there is no indication of improper conduct by Warner or ICE generally, the statement Flores-Sandoval allegedly made to the Border Patrol must be suppressed and may not be invoked as providing a proper basis for ICE to place him in custody and obtain additional statements and his fingerprints.

The two statutory sources the government relies upon for the authority to detain Flores-Sandoval underscore our conclusion that his detention by ICE was not justified. The first is a statute allowing immigration officials to "interrogate any alien or person *believed to be an alien* as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1) (2000) (emphasis added). A plain reading of this statute requires the government to show that immigration officials *believed* Flores-Sandoval was an alien before questioning him. Similarly, the second source of authority the government cites is a federal regulation allowing immigration officials to issue a detainer to "seek[] custody of an alien presently in the custody of [another] agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a) (2005). The section of the regulations immediately following the above-quoted section sets forth "standards for enforcement activities . . . [that] must be adhered to by every immigration officer." Id. § 287.8. Section 287.8 requires that prior to an arrest, an immigration officer must have a "reason to believe" the person is an illegal alien. Id. § 287.8(c)(2)(i).

The government has not shown, nor even asserted, that ICE had formed a reason to believe Flores-Sandoval was an illegal alien based on anything other than his initial statement to the Border Patrol admitting he was in the country illegally. Absent that statement, which we again point out was made in circumstances unrevealed by the record and presumably without a Miranda warning, the government has demonstrated no evidence to justify detaining him. In other words, because the government has failed to show that the statement was made in circumstances that make its use permissible, we cannot say the government demonstrated a basis for believing Flores-Sandoval was an illegal alien. Consequently, the authority for his full-blown custodial arrest, overnight detention, transportation, and fingerprinting is not to be found in the statute or regulation on which the government relies.

Nor do we find any factual or legal distinction in this case that would permit an outcome different from the outcome in Guevara-Martinez, which held, in similar

circumstances, that fingerprint evidence is subject to the exclusionary rule. 262 F.3d at 755–57. As in Guevara-Martinez, there has been no showing that Flores-Sandoval consented to the taking of his fingerprints, and it is unlikely that Flores-Sandoval felt free to decline Warner's request for fingerprints and terminate the encounter. See United States v. Zamoran-Coronel, 231 F.3d 466, 469 (8th Cir. 2000) (citing Florida v. Bostick, 501 U.S. 429, 435–37 (1991)). In addition, the fingerprints were taken during a custodial detention by ICE that has not been constitutionally justified. Finally, Flores-Sandoval's fingerprints were taken "for the purpose of assisting the [ICE] investigation." Guevara-Martinez, 262 F.3d at 756. Thus, the District Court properly excluded the fingerprint evidence.

Because the government was able to demonstrate no constitutional justification for detaining Flores-Sandoval, the District Court did not err in granting his motion to suppress his fingerprint evidence and statements.

## III.

Following the disposition of this appeal, ICE may issue a detainer to retake custody of Flores-Sandoval because, as a jurisdictional rather than an evidentiary matter, his body and identity cannot be suppressed as fruit of the poisonous tree. Id. at 753 (quoting INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984)). ICE will likely obtain a new set of fingerprints from Flores-Sandoval for civil deportation proceedings, and the government may recharge him with illegal re-entry after deportation. As a practical matter, our decision is of very limited value to Flores-Sandoval. The decision simply applies well-established Supreme Court and Eighth Circuit precedent and admittedly reaches a result that has a somewhat academic feel to it. Yet we believe there is value in reminding the government that it must do things "the right way." Id. at 756. Our holding today serves that important interest.

We affirm the District Court.

_____