# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2257

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Oscar Flores-Sandoval, also known as | * | District of South Dakota. |
| Armando Polanco-Diaz, also known as, | * | |
| Daniel Sanchez-Rodriguez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 17, 2006
Filed: January 30, 2007 (corrected 1/31/07)

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Oscar Joel Flores-Sandoval was indicted for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). That indictment was dismissed, after this court's opinion in *United States v. Flores-Sandoval*, 422 F.3d 711 (8th Cir. 2005). Flores-Sandoval was re-indicted one week later. The district court[1] denied his motion to suppress evidence. This court affirms.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

I.

In July 2004, Flores-Sandoval was taken into custody. This court upheld the district court's decision suppressing the fingerprints and statements obtained during that illegal detention. *Id.* at 715. On October 6, 2005, the United States dismissed the indictment. That same day, the Bureau of Immigration and Customs Enforcement (ICE) removed its detainer and Flores-Sandoval was released from jail.

As Flores-Sandoval walked out of jail, ICE agent Tracy Warner approached him on the sidewalk outside the jail. Warner identified himself as an ICE agent and asked Flores-Sandoval's name, which he provided. Warner then asked where he was born and he replied Mexico. Questioned about his immigration status, Flores-Sandoval stated that he had sent his documents home, had no identification, and did not have a social security number. When asked why he did not have a social security number or immigration documents, Flores-Sandoval admitted that he was in the country illegally.

Warner took Flores-Sandoval into custody. Flores-Sandoval told Warner that his attorney had advised him not to answer questions or to give his name or fingerprints. Flores-Sandoval inquired why he had been released; Warner showed him a copy of the dismissed indictment. Warner asked if he wanted to call his attorney, providing a telephone, lunch, and the number to the Federal Public Defender's office. After placing a phone call to his attorney's office, Flores-Sandoval knocked on the door of the holding cell and stated he was ready to give his fingerprints (he did not tell the ICE agents that he had not spoken with his attorney).

Flores-Sandoval's fingerprints were taken and placed into ICE's system, which indicated that he had previously been deported. Further research showed that he had not requested permission to reenter the country. Flores-Sandoval was re-indicted for illegal reentry after deportation. After the district court denied his motion to suppress

his statements and fingerprints, Flores-Sandoval entered a conditional guilty plea, reserving an appeal of the denial of his motion. On appeal, Flores-Sandoval argues that the statements and fingerprints were obtained during an illegal seizure and should be suppressed.

## II.

This court reviews for clear error a district court's factual determinations supporting a denial of a motion to suppress, and its conclusions of law de novo. *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006). This court reverses a denial of a motion to suppress only if the decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.*, *quoting United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006).

Flores-Sandoval argues that his statements and fingerprints should be suppressed because the sidewalk encounter violated the Fourth and Fifth Amendments. He maintains that Warner did not have reasonable suspicion to stop and question him and that his "un*Mirandized* statements" are not admissible. Quoting this court's opinion, he argues that "statements made from an illegal detention are not admissible." *Flores-Sandoval*, 422 F.3d at 714, *quoting United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004). The government responds that the encounter was consensual, and therefore does not implicate the Fourth and Fifth Amendments.

## A.

There are three categories of police encounters: (1) consensual communications involving no coercion or restraint, (2) *Terry* stops – minimally intrusive seizures that are significant enough to invoke the Fourth Amendment and must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable

cause.  ***United States v. Johnson***, 326 F.3d 1018, 1021 (8th Cir. 2003); *see generally* ***Terry v. Ohio***, 392 U.S. 1, 20 (1968).

A consensual encounter does not implicate the Fourth Amendment.  ***United States v. Hathcock***, 103 F.3d 715, 718 (8th Cir. 1997).  "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."  ***United States v. Vera***, 457 F.3d 831, 834 (8th Cir. 2006), *quoting* ***United States v. Drayton***, 536 U.S. 194, 200 (2002).  "Mere police questioning does not constitute a seizure."  ***United States v. Barry***, 394 F.3d 1070, 1074 (8th Cir. 2005), *quoting* ***Florida v. Bostick***, 501 U.S. 429, 434 (1991); ***Hathcock***, 103 F.3d at 719; ***United States v. Slater***, 411 F.3d 1003, 1005 (8th Cir. 2005).  A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is "so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave."  ***Hathcock***, 103 F.3d at 718, *quoting* ***United States v. McKines***, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc); *see also* ***Johnson***, 326 F.3d at 1021; ***INS v. Delgado,*** 466 U.S. 210, 216 (1984).  Flores-Sandoval contends that the encounter was a seizure, not supported by reasonable suspicion.

This court considers the totality of the circumstances, "not one particular detail," to determine whether a seizure occurred.  *See* ***Johnson***, 326 F.3d at 1022.  Factors indicating a seizure are: the presence of several officers, a display of a weapon by an officer, physical touching of the person, or the "use of language or tone of voice indicating that compliance with the officer's request might be compelled."  ***Hathcock,*** 103 F.3d at 718-19, *quoting* ***United States v. White***, 81 F.3d 775, 779 (8th Cir. 1996); ***Barry***, 394 F.3d at 1075.  A seizure occurs when the officer, "by means of physical force or show of authority, has in some way restrained the liberty" of a suspect.  ***Id.*** at 1074, *quoting* ***Terry***, 392 U.S. at 19.

The question is whether by the totality of the circumstances, Flores-Sandoval's liberty was restrained in such a way that a reasonable person would not feel free to leave. This "'reasonable person test' presupposes an innocent person." *Id.* at 1075, *quoting **Bostick***, 501 U.S. at 438.

Flores-Sandoval contends that the following circumstances indicated that a reasonable person in his situation would not have felt free to leave:

> (1) Warner had previously arrested Flores-Sandoval and Flores-Sandoval had been continuously imprisoned for the last 14 months due to that arrest. (2) No one had informed Flores-Sandoval that the charges against him had been dismissed before Warner stopped him. (3) Jail officials held Flores-Sandoval in custody to be picked up by Warner on a new detainer and did not release him until Warner arrived.[2] (4) Warner commenced questioning Flores-Sandoval without first asking if he would be willing to answer questions. (5) Warner displayed ICE credentials and a badge to Flores-Sandoval as a show of authority and then began questioning him. (6) The confrontation took place on the jailhouse walkway near the door rather than in a neutral place. (7) Warner was already present and waiting for Flores-Sandoval when the jailors finally opened the door to release him into Warner's custody.

In addition to these circumstances, the district court found several other facts. Warner did not indicate that answering his questions was required. Warner, wearing plain clothes, was the only officer present. The detainer had been released and he was free to leave. The district court found no evidence that Warner displayed a weapon,

___

[2] The district court did not find circumstance 3 as a fact. The district court approved the magistrate judge's finding: "Agent Warner stated he was not aware of the communication from the Marshal Service to the Jail. On the contrary, Agent Warner testified he told the jail to *drop* the detainer."

touched Flores-Sandoval, used language or a tone indicating that compliance would be compelled, or that Flores-Sandoval resisted the request to identify himself. The district court noted that there is no per se requirement than an officer inform an individual of his right to refuse, and no presumption that consent is invalid where given without an explicit notification of the right to refuse. The district court's findings of fact are not clearly erroneous.

By the totality of the circumstances, the atmosphere was not so intimidating or threatening that a reasonable person would not have believed himself free to leave. Agent Warner approached Flores-Sandoval, asked questions, and Flores-Sandoval answered without resistance, even though his attorney had previously advised him not to reveal his identity or offer his fingerprints. Flores-Sandoval was not restrained or compelled to comply. His liberty was not restrained in such a way that a reasonable person would have felt compelled to stay. Because the encounter was consensual, the Fourth Amendment was not implicated, and reasonable suspicion was not required. *Hathcock*, 103 F.3d at 718.

B.

Flores-Sandoval contends that the un*Mirandized* statements he made on the sidewalk were inadmissible. However, "police officers are not required to administer *Miranda* warnings to everyone whom they question." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc), *quoting Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The protections of *Miranda* apply to custodial interrogations. *See United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Maine v. Thibodeau*, 475 U.S. 1144, 1146 (1986), *quoting Miranda*, 384 U.S. at 444 (1966). "The ultimate inquiry to determine custody for *Miranda* purposes is whether there was a formal arrest, or restraint on freedom of

movement of the degree associated with a formal arrest." ***Black Bear***, 422 F.3d at 661.

In making this determination, the court first considers the totality of the circumstances confronting Flores-Sandoval and then determines whether a reasonable person in his position would consider his "freedom of movement restricted to the degree associated with formal arrest." ***United States v. Czichray***, 378 F.3d 822, 826 (8th Cir. 2004). This determination is "based on the objective circumstances, not on subjective views of the participants." ***Black Bear***, 422 F.3d at 661; *see* ***LeBrun***, 363 F.3d at 720.

Factors indicating custody are: (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning. ***United States v. Griffin***, 922 F.2d 1343, 1349 (8th Cir. 1990). These factors, however, are not exclusive, and custody "cannot be resolved merely be counting up the number of factors on each side of the balance and rendering a decision accordingly." ***Czichray***, 378 F.3d at 827.

While Flores-Sandoval was not informed that he was free to leave, he had been released from jail and was free to leave, he voluntarily replied to the questions posed to him, and the district court found no evidence that Warner coerced Flores-Sandoval's responses through physical or verbal coercion. Further, even if Flores-Sandoval were in custody, "a *Miranda* violation does not demand the suppression of derivative physical evidence if the non-*Mirandized* statement was voluntary." ***United States v. Villalba-Alvarado***, 345 F.3d 1007, 1008 (8th Cir. 2003). The district court found that the absence of *Miranda* warnings did not render the fingerprints inadmissible. "The

Fifth Amendment's Self Incrimination Clause offers no protection against compulsion to submit to fingerprinting." *Id.* at 1019, *quoting* ***Pennsylvania v. Muniz***, 496 U.S. 582, 590 (1990). As Flores-Sandoval's encounter was consensual and he was not in custody, the district court properly denied his motion to suppress.

C.

In addition to the Fourth and Fifth Amendment arguments, Flores-Sandoval contends that Warner's conduct violates 8 U.S.C. § 1357(a)(1) authorizing immigration officials "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." *See also* **8 C.F.R. §§ 287.7**, **287.8(c)(2)(i)**. Flores-Sandoval contends the government cannot show that the ICE agent had reason to believe he was an alien other than as learned from the initial illegal detention.

As a jurisdictional matter – rather than as an evidentiary matter – the body and identity of a person cannot be suppressed as fruit of an unlawful detention. *See* ***Flores-Sandoval***, 422 F.3d at 715, *quoting* ***INS v. Lopez-Mendoza***, 468 U.S. 1032, 1039 (1984); *see also* ***United States v. Guevara-Martinez***, 262 F.3d 751, 753 (8th Cir. 2001). This court's previous opinion anticipates that ICE may retake custody of Flores-Sandoval. ***Flores-Sandoval***, 422 F.3d at 715. ICE obtained his statements and fingerprints by consensual methods that did not violate the Fourth and Fifth Amendments. *See* *id.*; ***Guevara-Martinez***, 262 F.3d at 755. The statements and fingerprints were not taken during an illegal detention. *See* ***United States v. Perez-Perez***, 337 F.3d 990, 994 (8th Cir. 2003); ***Flores-Sandoval***, 422 F.3d at 715; ***Guevara-Martinez***, 262 F.3d at 756. For these reasons, the statements and fingerprints are "untainted evidence" of identity, which the government may use. *See* ***United States v. Rodriguez-Arreola***, 270 F.3d 611, 619 (8th Cir. 2001).

## III.

The judgment of the district court is affirmed.

_____