**UNITED STATES of America,**
**Plaintiff,**

v.

**Jonathan LUKEN, Defendant.**

**No. CR 06–40130.**

United States District Court,
D. South Dakota,
Southern Division.

Aug. 21, 2007.

Jeffrey C. Clapper, U.S. Attorney's Office, Sioux Falls, SD, for Plaintiff.

Timothy Joseph Langley, Federal Public Defender, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER RE: MAGISTRATE'S REPORT AND RECOMMENDATION, MOTION TO DISMISS, AND CONDITIONAL PLEA

LAWRENCE L. PIERSOL, District Judge.

Pending before the Court are Defendant Jonathan Luken's objections (Doc. 37) to Magistrate John E. Simko's Report and Recommendation (Doc. 33) denying Defendant's motion to suppress evidence (Doc. 19), Defendant's motion to dismiss the Indictment (Doc. 44), and Defendant's motion to enter a conditional plea to the charge of knowingly possessing computer files that contain images of child pornography (Doc. 39). The Court requested and received briefing regarding case law within the Eighth Circuit relating to deleted child pornography images. *See United States v. Stulock,* 308 F.3d 922, 925 (8th Cir.2002); *United States v. Johnson,* 2006 WL 2548913 (N.D.Iowa)(not reported in F.Supp.2d). The Court then held a hearing on Monday, July 16, 2007, at which time issues relating to the knowing possession of computer files was addressed by testimony and argument. After considering the testimony, exhibits, arguments, applicable law and all documents on file, the

Court is issuing this Memorandum Opinion and Order.

## FACTUAL AND PROCEDURAL BACKGROUND

After Immigration and Customs Enforcement received information that Defendant, Jonathan Luken, had used credit cards to purchase child pornography in 2002 and 2003, South Dakota law enforcement officials were notified. On July 25, 2006, Agent Boone from the South Dakota Division of Criminal Investigation and two other law enforcement officers met Defendant at his place of employment in North Sioux City, South Dakota, and asked to speak to him and to look at his Gateway 700x computer at his residence in North Sioux City. No Miranda warning was given Defendant, and Defendant agreed to speak to Agent Boone. Defendant advised Agent Boone that he had used his computer several years prior to purchase child pornography, and that he had downloaded the purchased pornography, viewed it and then immediately deleted the purchased pornography. Defendant stated that recently he was only looking at free websites and he was pretty sure that there were no saved images on his computer.

Agent Boone explained to Defendant that a file was never really deleted from the computer, but only the file showing the location of the file was deleted. Agent Boone requested from Defendant his permission to look at Defendant's computer and to have the computer forensically examined. Agent Boone explained to Defendant that in the forensic process law enforcement would look for files that were deleted or in temporary Internet files and that special software would be used to recover any deleted files. With Defendant's approval, Agent Boone then secured the tower portion of Defendant's computer. Defendant signed a consent form which states: "On 7–25–06 I, John Luken, give law enforcement the permission to seize and view my Gateway computer."

Agent Boone testified that only after speaking with Defendant did he believe there was probable cause for a search warrant. After securing Defendant's computer Agent Boone then applied for and received a search warrant for the computer from a State Court Judge. The application for the search warrant and the search warrant itself identified the property subject to the search warrant as:

> "Contraband, the fruits of crime, or things otherwise criminally possessed," and "Property designed or intended for use in, or which is or has been used as the means of committing a criminal offense."

Neither the application for the search warrant nor the search warrant itself checked the property description of "Property that constitutes evidence of the commission of a criminal offense." The Search Warrant ordered that the Search Warrant be executed within 10 days.

The hard drive of Defendant's computer was mailed to a lab in Pierre within a couple of days after it was taken from Defendant, but then mailed back to Agent Boone approximately four weeks later because the lab was too far behind. The hard drive was then imaged, or copied byte for byte, and the image was then loaded into a software program called Forensic Tool Kit for analysis. In conducting the forensic analysis Agent Boone observed 200 images which he considered to be child pornography. He then took a random sampling of 41 images from the 200 images. None of these images were found in any of the Temporary Internet Files folders. Instead, these images were found on the thumbs.db file, i.e., thumbs database. Thirty three of the images show a computer file path of "Documents and Settings*Jon*My Documents*My Mu-

sic." Agent Boone has opined in his affidavit (Doc. 46–2) and in his testimony at the July 16, 2007, hearing that the only way for the computer to create a file in a thumbs.db database is for a computer user to purposely save or download an image onto the computer's hard drive and view the image in a thumbnail view.[1] Agent Boone has also opined that the thumb.db files found with the "Documents and Settings*Jon*My Documents*My Music" file path indicate that those images were purposefully stored at the file folder location by a computer user and that these files were then deleted.

In an Indictment which was filed on December 13, 2006, Defendant was indicted for one count of possession of child pornography. The Indictment states in part: "On or about between March 20, 2005 and July 25, 2006, at North Sioux City, in Union County, in the District of South Dakota, defendant Jonathan Luken, did knowingly possess computer files that contained images of child pornography. . . ."

Defendant filed a motion to suppress (Doc. 19) alleging that he was seized and in custody at the time of his July 25, 2006, interview, and that the seizure was not justified by any preexisting probable cause and was therefore unconstitutional under the Fourth Amendment. Defendant also alleged that he should have been, but was not given a *Miranda* warning or even a complete set of *Griffin* warnings, and that the affidavit in support of the search warrant was based on information gained from an un*Mirandized* statement made during an unconstitutional seizure. Defendant further contended that the forensic examination of the hard drive exceeded the time limits imposed by the terms of the search warrant and also exceeded the scope of the search set forth in Defendant's consent statement. Defendant maintained that under the totality of the circumstances, Defendant's consent was not voluntary. Doc. 21. Magistrate John E. Simko's Report and Recommendation rejected all of the above arguments and recommended denial of Defendant's motion to suppress evidence. Doc. 33. With regard to the aforementioned issues, the Court adopts the reasoning and conclusions in the Report and Recommendation.

In addition to the issues described in the preceding paragraph, Defendant raised an additional issue at the suppression hearing which had not been previously briefed, and then presented this issue in Defendant's Supplemental Brief Following Suppression Hearing (Doc. 30). In this issue Defendant pointed out that both the search warrant affidavit and the warrant itself had boxes to check indicating whether the search was for "evidence," "contraband," or both, and both documents had checkmarks in the "contraband" box, but neither had a checkmark in the "evidence" box. Defendant maintained that since the testimony and the exhibits at the suppression hearing showed that none of the approximately 41 images at issue was located in a file which could be accessed on Mr. Luken's computer monitor without forensic software comparable to that used by Agent Boone, and since Defendant did not possess any such forensic software, that Defendant did not possess contraband and that the search also exceeded the scope of the search warrant in this regard. The Magistrate's Report and Recommendation, in rejecting this argument, relied upon *United States v. Romm*, 455 F.3d 990, 998 (9th Cir.2006), and *United States v. Tuck-*

---

**1.** Webopedia Computer Dictionary defines a thumbnail as "a miniature display of a page to be printed," which allows the user "to view the layout of many pages on the screen at once."

*er,* 305 F.3d 1193 (10th Cir.2002). In the *Romm* case, in which the defendant knew about the cache files on his computer and had taken steps to access and delete them, the Ninth Circuit Court of Appeal opined as follows:

> In the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it. *See United States v. Tucker,* 305 F.3d 1193, 1204 (10th Cir. 2002), *cert. denied,* 537 U.S. 1223, 123 S.Ct. 1335, 154 L.Ed.2d 1082 (2003) (*"Tucker II"*). Here, we hold Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them. While the images were displayed on Romm's screen and simultaneously stored to his laptop's hard drive, he had the ability to copy, print, or email the images to others. Thus, this evidence of control was sufficient for the jury to find that Romm possessed and received the images in his cache.

455 F.3d at 998.

In Defendant's Objection 14 to the Magistrate's Report and Recommendation Defendant maintained that the above case law relied upon by the Magistrate did not involve a situation in which a defendant is ignorant of the fact this his web browser cached unlawful images. Defendant moved the Court to schedule a change of plea hearing following the Court's ruling on Defendant's Objections to the Report and Recommendation on Defendant's suppression motion. Doc. 39. Defendant has entered into a plea agreement which involves a conditional plea to the charge of knowingly possessing computer files that contain images of child pornography. Doc. 40. The Factual Basis Statement for the proposed conditional plea states in part:

"On July 25, 2006, at the defendant's residence in North Sioux City, South Dakota, the defendant Jonathan Luken, knowingly possessed thirty-three (33) images of child pornography that were contained within his computer."

Defendant has also moved to dismiss the Indictment. Doc. 44. The motion to dismiss states, "In the Eighth Circuit, 'one cannot be guilty of possession for simply having viewed an image on a website, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image.' *United States v. Stulock,* 308 F.3d 922, 925 (8th Cir.2002)." Files stored in the "Temporary Internet Files" folder or cache are created automatically by the Microsoft web browser Internet Explorer so that if the site is revisited it comes up more quickly. These files are created by the Internet Explorer during the normal course of web browsing without any action of the computer user, or unless a sophisticated computer user is involved, without even any knowledge of the computer user. There is no evidence that Defendant is a sophisticated computer user.

## WHETHER EIGHTH CIRCUIT LAW REQUIRES SUPPRESSION OF THE EVIDENCE FOUND ON THE HARD DRIVE OF DEFENDANT'S COMPUTER AND DISMISSAL OF THE INDICTMENT?

In *United States v. Stulock,* 308 F.3d 922 (8th Cir.2002), the defendant was convicted after a bench trial of knowingly receiving a child pornography videotape, but was acquitted on the charge of knowingly possessing child pornography. The possession charge in the *Stulock* case specified only the images found in the browser cache of the defendant's computer. The district court, in acquitting the defendant of the possession charge, explained that

one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image. The Government did not appeal from the trial court's ruling regarding the possession charge. Although the Eighth Circuit's opinion set forth the holding of the district court regarding the acquittal on the possession charge, the Eighth Circuit did not clearly hold that an image automatically stored in a browser's cache cannot support a conviction for possession of child pornography. 308 F.3d at 925.

In *United States v. Johnson,* 2006 WL 2548913, at *3 (N.D.Iowa, 2006), the district court, after citing *United States v. Stulock,* 308 F.3d 922 (8th Cir.2002), stated, "The government apparently concedes that Defendant cannot be convicted of possession or receipt of child pornography on the basis of the deleted child pornography found in the Temporary Internet Files folder." Also, in *United States v. Kuchinski,* 469 F.3d 853 (9th Cir.2006), the Ninth Circuit held that for sentencing purposes the defendant did not knowingly receive and possess child pornography images found in his computer's Temporary Internet files. In reaching that holding the Ninth Circuit explained,

> Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control.

469 F.3d at 863.

■ In the case at hand, however, both Agent Boone and the Defendant's expert,

Sean Fahey, Computer Systems Administrator for the Office of the Federal Public Defender for the Districts of South Dakota and North Dakota, agree that none of the images of child pornography found on Defendant's computer were found in "Temporary Internet Files," but rather the files were located in the thumbs database with a computer path of: "Documents and Settings*Jon*My Documents*My Music." With the information available to him at the time of the July 16, 2007, hearing, Sean Fahey could not substantially dispute Agent Boone's opinion that the only way Defendant could have created a file in a thumbs.db database was to have purposely saved or downloaded an image onto the computer's hard drive and viewed the image in a thumbnail view.

Even if the Court were to accept Defendant's limited definition of contraband and the facts were different than what has been presented, the Court cannot ignore that the search warrant also identified as subject to the search, "Property designed or intended for use in, or which is or has been used as the means of committing a criminal offense." Under the facts of this case the hard drive of Defendant's computer is consistent with the property identified as subject to search in the Search Warrant. Defendant's objections to the Magistrate's Report and Recommendation regarding suppression are thus overruled.

■ A person who knowingly has ownership, dominion or control over contraband or the place in which contraband is concealed has actual possession of it. A person who, although not in actual possession of a thing, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it. Proof of constructive possession suffices to prove knowing possession. *See*

*United States v. Timlick,* 481 F.3d 1080, 1084 (8th Cir.2007)(case involving possession of methamphetamine with intent to distribute). Evidence that Defendant purposely saved or downloaded child pornography images onto the computer's hard drive and viewed the images in a thumbnail view suffices to establish knowing possession of child pornography.

In addition, as the Court stated at the July 16, 2007, hearing, the concerns raised in Defendant's motion to dismiss are sufficiency of the evidence concerns that generally are not properly raised in a motion to dismiss or prior to trial. See *United States v. Ferro,* 252 F.3d 964, 967–68 (8th Cir.2001)(if indictment contains factually sufficient allegations, federal criminal procedure does not provide for a determination of sufficiency of the evidence prior to trial). The file sharing issues raised at the hearing would be more appropriately presented as a defense at trial as opposed to presenting a basis for dismissal of the indictment.[2] For these reasons, the motion to dismiss is denied.

## WHETHER THE COURT WILL ACCEPT THE CONDITIONAL PLEA AS IT IS NOW PRESENTED?

■ Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides in part that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."[3] In this case Defendant has entered into a plea agreement reserving his right to seek appellate review of an adverse decision on his motion to suppress. Doc. 40. The Court is free to reject a conditional plea for any or no reason. *See United States v. Stevens,* 487 F.3d 232, 238 (5th Cir.2007).

■ Before entering judgment on any plea, the Court must determine that there is a factual basis for the plea. *See* FED. R.CRIM.P. 11(b)(3). Although the Indictment establishes the date of the offense as on or about between March 20, 2005, and July 25, 2006, the factual basis for the plea sets forth the date of the offense as July 25, 2006. The forensic report and the testimony at the July 16, 2007, hearing establish that the "last modified date" or the date on which Defendant took some action other than viewing the images occurred prior to July 25, 2006. The Court is rejecting the conditional plea as it is now presented but is allowing the Defendant until August 30, 2007, to present an amended factual basis statement which conforms to the evidence regarding the dates of knowing possession. Accordingly,

IT IS ORDERED:

1. That the Magistrate's Report and Recommendation (Doc. 33) denying Defendant's motion to suppress evidence is adopted for the reasons set forth in this opinion;

2. That Defendant's Objections (Doc. 37) to the Magistrate's Report and Recommendation denying Defendant's motion to suppress evidence are overruled;

3. That Defendant's Motion to Dismiss Indictment (Doc. 44) is denied;

4. That the Court is at this time denying Defendant's Motion for Change of Plea (Doc. 39), but that Defendant shall have

---

**2.** The Court notes that at the March 26, 2007, suppression hearing, Agent Boone testified that there was no indication of file-sharing software in this case. Suppression Transcript, p. 63.

**3.** Rule 11(a)(2) further provides: "A defendant who prevails on appeal may then withdraw the plea."

until August 30, 2007, to present an amended factual basis statement which conforms to the evidence regarding the dates of knowing possession and the Court will then reconsider the matter;

5. That the jury trial herein shall commence in Sioux Falls, South Dakota, on Tuesday, September 25, 2007, with counsel to be present for motions in limine at 9:00 A.M., and with the jury to report at 9:30 A.M.; and

6. That the period of delay resulting from the continuance of this case is excluded in computing the time within which the trial of the offense for the Defendant must commence, as the Court finds that the ends of justice served by taking such action outweigh the best interests of the public and the Defendant in a speedy trial. 18 U.S.C. § 3161(h)($l$)(J) and (h)(8)(A).

REPORT and RECOMMENDATION

JOHN E. SIMKO, United States Magistrate Judge.

Pending is Defendant's Motion to Suppress Evidence (Doc. 19). A hearing was held on Monday, March 26, 2007. Defendant was personally present and represented by his counsel of record, Assistant Federal Public Defender Tim Langley. The Government was represented by Assistant United States Attorney Jeff Clapper. DCI Agent Troy Boone testified at the hearing. Four exhibits were received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## *RECOMMENDATION*

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED.**

## *JURISDICTION*

Defendant is charged in an Indictment with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated November 29, 2006.

## *FACTUAL BACKGROUND*

South Dakota Division of Criminal Investigation Agent Troy Boone was involved in an investigation of Mr. Luken in July, 2006. TR 11. He had been working the investigation with ICE Agent Jesse Begres. Agent Begres informed Agent Boone Luken had used a credit card to purchase child pornography over the internet a few years earlier. TR 11, 13. Boone and Agent Begres, along with a representative of the Union County Sheriff's office visited Mr. Luken's work place (a casino in North Sioux City) on July 25, 2006 at approximately 11:00 a.m. TR 13. The agents were dressed in plain clothes. Their firearms were not visible. TR 13–14. The entered the casino and asked for Mr. Luken. The hostess showed them to Mr. Luken's office. TR 14. The office is near the center of the building and is relatively small. The hostess left the agents with Mr. Luken. TR 15. Agent Boone introduced himself and Agent Begres and immediately explained the reason for their visit. TR 15–16.

Agent Boone told Mr. Luken he would like to look at his home computer, and that he would prefer to speak with Luken in a more private setting. TR 16. Boone asked Mr, Luken if he would be willing to discuss the matter with the Agents at his home. Luken agreed. TR 16–17. When Boone explained the Agents wanted to

look at his computer, Luken said "absolutely." TR 17. Given the choice of riding with the agents or driving himself, Luken chose to drive his own vehicle to his residence. TR 17. He asked to make some phone calls before he left the casino. The Agents waited in the parking lot while Mr. Luken made some calls. TR 17. A few minutes later, Mr. Luken drove around to where the Agents were waiting in the parking lot, and they got into their unmarked law enforcement vehicle and followed him a few blocks to his home. TR 18–19.

When everyone arrived at Mr. Luken's home, they convened outside to visit with Mr. Luken about whether he wanted to explain their presence to his wife before they went in. TR 19–20. They asked if it was o.k. for them to come in with him, and he said yes. TR 20. Agent Boone candidly admitted Mr. Luken did not warmly invite them in for a cup of coffee, but did consent to allow them to follow him into his home. TR 20–21. Agent Boone asked Mr. Luken if he would like to visit in Agent Boone's car, to avoid having the discussion in the presence of Luken's wife. TR 21–22. Mr. Lukenagreed. TR22. Agent Boone unlocked the vehicle from the driver's side; Mr. Luken entered on his own from the passenger's side. TR 22. Agent Boone told Mr. Luken he did not have to answer any questions, and that he was free to leave. TR 23. Agent Boone did not, however, tell Luken that he had the right to ask the Agents to leave. TR 39. They talked about Mr. Luken's computer knowledge and use, and the reason for the investigation. TR 23. Mr. Luken told Boone his computer was in the basement and that he had used it to look at child pornography, but that there were no "saved" files on it. TR 24. After Boone explained that deleted files are not truly deleted but are merely transformed into a form which is difficult to find, Luken said there probably would be files found on his computer. TR25. Agent Boone asked permission to look at Luken's computer and to forensically look for deleted files and temporary internet files. TR 24. Boone requested and received a handwritten consent to search the computer. EX 1. The written consent is very basic and does not explain the computer will be forensically examined. TR 41. Agent Boone explained he wanted to keep the written consent "simple" but insisted he had explained the forensic examination, at least in basic terms, to Mr. Luken before he obtained the written consent. *Id.* Mr. Luken did not express any limitation on his consent to search the computer. TR 26. Mr. Luken was not advised of his *Miranda* rights at any time on July 25th. TR 38–39.

In his affidavit in support of search warrant (prepared on July 25) Agent Boone explicitly states "we" obtained Mr. Lukens' consent to "view and image" the hard drive of the computer.[1] EX 3. In his narrative report (prepared on July 28) Agent Boone states he asked Mr. Luken about his level of computer expertise, and whether he had used passwords or encryption. Luken said he did not. When Boone explained to Luken that even though a file is deleted, it is not truly deleted, Luken then admitted there "probably was" some child pornography on the computer. It was after this explanation that Luken executed the written permission to "seize and view" his computer. EX 2.

After the conversation in Agent Boone's car and obtaining the written consent,

---

**1.** On cross examination, Boone explained the "we" in his affidavit referred to Agent Begres and himself, while his narrative report only referred to his own conversations with Mr. Luken.

Agent Boone went into Mr. Lukens' home and disconnected his computer. TR 26–27. When Boone returned to his office, he prepared the affidavit in support of the search warrant (EX 3), and the warrant was signed by a State Court Magistrate Judge that same day (July 25th). EX 4. The affidavit requested, and the warrant granted permission to search for (1) contraband, the fruits of a crime, or things otherwise criminally possessed; and (2) property designed or intended for use in or which has been used as the means of committing a criminal offense. *Id.* The blanks on the affidavit and warrant requesting permission to search for *evidence* of the commission of an offense were left blank. (*See* EX 3 and 4). The warrant further commanded the searching officer to search Mr. Lukens' computer for (1) computer software including but not limited to hard disks and floppy disks containing computer programs, including but not limited to software data files, electronic mail files, software programs and files to receive and transmit photographs; and (2) data contained on the hard drive, within a Gateway computer bearing serial number 0026390265, to include images depicting minors engaged in sexually explicit conduct or exploitation of a minor, videos and video clips of minors engaged in sexually explicit conduct or exploitation of a minor, emails containing transactions or communications pertaining to but not limited to purchasing or obtaining data depicting minors engaged in sexually explicit conduct or exploitation of a minor. EX 4. Agent Boone explained that he applied for and obtained the warrant even though he already had Mr. Luken's permission to search because (1) he believed that after his conversation with Mr. Luken he had probable cause to search[2] and (2) he want-

ed to have the warrant in case at any time Mr. Luken revoked his consent. TR 27.

Agent Boone spoke with Mr. Lukens several times after July 25, 2006, but Luken never revoked his consent to search the computer. TR 28. Agent Boone removed the hard drive and sent it to Pierre for examination within a few days of when it was seized from Mr. Luken. TR 74. The lab in Pierre returned the computer, however, because of an extreme backlog. TR 75. The computer was forensically examined by Agent Boone with forensic software when he returned from a training program in Georgia at the end of August, 2006. TR 28–29. Approximately forty-one incriminating images were found on the computer. TR 67. The images found were "thumbs.db" database files-the originals of which had been deleted from the hard drive. TR 70–71. It would not have been possible to detect them without the aid of special software, which Mr. Luken did not possess. TR 71–72. The evidence on the hard drive did not change from the time it was seized from Mr. Lukens' home to the time it was examined. TR 30.

### *DISCUSSION*

**Burden of Proof**

■ As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v. Phillips,* 540 F.2d 319 (8th Cir.1976) *cert. denied,* 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976), but on the government to justify a warrantless search or seizure. *United States v. Bruton,* 647 F.2d 818 (8th Cir.1981) *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). The standard of proof is a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

**2.** Boone admitted after determined cross-examination that he did not believe he had

probable cause for the search before his interview with Mr. Luken. TR 48.

The Government also bears the burden of proving by a preponderance of the evidence that Miranda warnings were either not necessary or that they were given and effectively waived. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *United States v. Short,* 790 F.2d 464, 467–68 (6th Cir.1986); *United States v. Charbonneau,* 979 F.Supp. 1177, 1181 (S.D.Ohio 1997).

**Whether Mr. Luken Was Unconstitutionally Seized/In Custody**

Defendant asserts all statements he made to law enforcement officials on July 25, 2006 and all evidence which was gathered as a result of the consent he gave on that date should be suppressed because (1) he was unconstitutionally seized in violation of the Fourth Amendment; and (2) he was in custody and was not advised of his *Miranda* rights. Therefore, Defendant asserts, all information (including Defendant's statements and his written consent to search his computer) gleaned by the law enforcement officers on July 25th is fruit of the poisonous tree and must be suppressed.

 "The Fourth Amendment's requirement that searches and seizures be founded on an objective justification governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall,* 446 U.S. 544, 551–52, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497 (1980). Accordingly, if a defendant is "seized" during police questioning, the questioning is constitutional only if the police reasonably suspect the defendant of wrongdoing. *Id.* But not all encounters between police and citizens rise to the level of a Fourth Amendment "seizure." A consensual encounter between an officer and an individual does not implicate the Fourth Amendment *United States v.*

*Hathcock,* 103 F.3d 715, 718 (8th Cir.1997) *cert. den.* 521 U.S. 1127, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997). Circumstances indicating a consensual encounter has been transformed into a seizure include: the threatening presence of several officers, the display of a weapon, some physical touching of the individual by the officer, and use of language or tone by the officer indicating compliance with the officer's request might be compelled. *Id.* at 718–19. The question is whether by the totality of the circumstances, the person's liberty was restrained in such a way that a reasonable person would not feel free to leave. This "reasonable person test" presupposes an innocent person. *United States v. Flores–Sandoval,* 474 F.3d 1142, 1145 (8th Cir.2007). That the officer does not specifically advise the individual of his right to walk away does not elevate the encounter into a seizure, absent some other evidence of coercion or restricted freedom. *Id.* (citation omitted). Also, an officer's unexpressed intent to detain "is of little consequence" when applying the objective standard to determine whether a Fourth Amendment seizure has occurred, *United States v. Archer,* 840 F.2d 567, 572 (8th Cir.1988) *cert. den.* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 354 (1988). Finally, that Agent Boone admitted he possessed probable cause *after* his conversation with Mr. Luken, but not before, has no bearing on his ability to initiate the conversation. *See United States v. Waldon,* 206 F.3d 597, 603 (6th Cir.2000) ("We know of no legal precedent suggesting a police officer can engage in a consensual encounter only with citizens whom he does not suspect of wrongdoing.").

 In applying the principles articulated above, it is important to remember the purpose of the Fourth Amendment is "not to eliminate all contact between the police and citizenry, but to prevent arbi-

trary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *Mendenhall*, 446 U.S. at 553–54, 100 S.Ct. at 1877. As long as the person being questioned is free to ignore the questions and walk away, the Constitution is not implicated. *Id.* In this instance, while there were three officers present, their presence cannot be characterized as threatening—they were in plain clothes and at no time displayed their weapons or used harsh, threatening or coercive language. There was no evidence of any physical contact. And there was no evidence that any of the officers indicated compliance with their requests might be compelled. As such, Mr. Luken was not unconstitutionally "seized" for Fourth Amendment purposes.

■■■■ Luken also asserts that his statements to Agent Boone should be inadmissible because they were given in violation of *Miranda.* "Law enforcement officials must administer *Miranda* warnings whenever they interrogate persons in their custody." *United States v. Brave Heart,* 397 F.3d 1035, 1038 (8th Cir.2005) (citations omitted). A person is in custody when he is formally arrested or his freedom of movement is restrained to a degree equivalent with formal arrest. *Id.* To determine whether a person is in custody, the Court looks to the totality of the circumstances confronting the defendant at the time of questioning. The determination is based on the objective circumstances of the interrogation rather than the subjective views harbored by either the officers or the person being questioned. *Id.* The only relevant inquiry is whether a reasonable person in [Mr. Luken's] position would have felt at liberty to end the interrogation and leave. *Id.* at 1038–39.

For many years, the Eighth Circuit relied on the various indicia of custody defined in *United States v. Griffin*, 922 F.2d 1343 (8th Cir.1990). They are: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning. In *United States v. Czichray,* 378 F.3d 822, 827 (8th Cir.2004), however, the Eighth Circuit cautioned the *Griffin* factors are by no means exhaustive and should not be applied "ritualistically." The Court emphasized "an express advisement that the suspect is not under arrest and that his participation is voluntary" is the most obvious and effective means of demonstrating he has not been taken into custody. *Id.* at 826. Nonetheless, the *Griffin* factors still appear in Eighth Circuit case law after *Czichray,* and continue to be cited with approval for determining the custody issue. *See e.g. United States v. Plumman,* 409 F.3d 919, 923 (8th Cir. 2005).

■■■■ Mr. Luken was not in custody at any time on July 25, 2006. When the agents arrived at his workplace, they were in plain clothes and an unmarked car. They introduced themselves, explained why they were there, and asked if Luken would be willing to discuss the matter in a more private setting. Luken agreed. The agents asked if Luken would be willing to reconvene at his home to discuss the matter further, and allowed him to drive there in his own vehicle. The agents left Luken

at the casino at his request while he made some phone calls. When everyone arrived at Mr. Luken's home, the agents asked for permission to enter, which Luken granted. Given the subject matter of the impending conversation, Agent Boone asked whether Mr. Luken would prefer to talk in Boone's car, outside the presence of Luken's wife. Luken agreed, and the two sat in Boone's unlocked car, where Boone advised Luken he was not required to answer questions and that he was free to leave. While the contact was initiated by the agents, Mr. Luken voluntarily left his workplace and drove his own vehicle to meet them at his home which was only a few blocks away. There was no evidence of strong arm tactics or deceptive stratagems. The interview occurred primarily in the Agent Boone's car, which was parked in Mr. Luken's driveway. There was no evidence presented that Mr. Luken was coerced or intimidated in any way, and he was not arrested at the end of the interview, but got out of the vehicle and walked into his home. Most importantly, no reasonable person would have felt he was under arrest after being assured he was not required to answer any questions, that the interview was voluntary, and that he could leave at any time.[3] Considering the totality of the circumstances, Mr. Luken was not in custody either during his brief encounter with the agents at Beano and Sherry's Casino or at any time during the encounter at the Luken's home on July 25, 2006. No *Miranda* warnings were required, therefore, and his statements are admissible.

### Validity of the Search

Agent Boone obtained written consent and a search warrant from a State Magistrate Judge before he forensically examined Defendant Luken's computer. Nevertheless, Luken asserts the search is invalid for several reasons.

### Consent to Search The Computer

Mr. Luken signed a very basic written consent to search his computer on July 25, 2005. *See* EX 1. The written consent states, "I, Jon Luken give law enforcement the permission to seize & view my Gateway computer." Luken claims this written consent was not voluntarily given, and is insufficient to allow a forensic examination of the computer's hard drive.

### Voluntariness

 A consent to search is valid if the "totality of the circumstances demonstrates that the consent was voluntary." *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990). The Government must prove voluntariness by a preponderance of the evidence. *Id.* Consent is voluntary if it is the product the free and unconstrained choice of its maker, rather than duress or coercion. *Id.* The totality of the circumstances which should be considered include both the characteristics of the accused and the details of the interrogation. *Id.* at 380–81. The characteristics of the accused which should be considered are: (1) his age; (2) his general intelligence and education; (3) whether he is intoxicated or under the influence of drugs when consenting; (4) whether he had been informed of his *Miranda* rights when consenting; (5) his previous experience with the criminal justice system. The interrogation environment circumstances which should be considered are: (1) whether the interrogation was lengthy; (2) whether the suspect was

---

**3.** During the hearing, counsel inquired whether Boone ever informed Luken that he (Luken) could tell the Boone to leave. Boone did not so advise Luken, but such an admonition would not have made much sense at the time, because the two men were sitting in Boone's vehicle.

threatened or physically intimidated; (3) whether the suspect relied on any promises or misrepresentations by law enforcement officers; (4) whether the suspect was in custody or under arrest when consent was given; (5) whether the suspect was in a private or secluded place when consent was given; and (6) whether he objected or stood silently by while the search occurred. *Id.* at 381.

■ It is recalled from Mr. Luken's initial appearance that he is thirty-four years old. He has two years of college education. At the time of his interview with Agent Boone, it was 11:00 a.m., he was at work, and there is no evidence he was intoxicated or under the influence of drugs. Mr. Luken had not been informed of his *Miranda* rights and had no significant prior experience with the criminal justice system. There was no specific evidence presented regarding the length of the interview. There was no indication that Mr. Luken was threatened or physically intimidated by any of the three law enforcement officers who were present. There were no promises or misrepresentations made to Mr. Luken. Mr. Luken was not in custody or under arrest when he gave consent for the search, and he was in the driveway of his own home (albeit in Agent Boone's unlocked vehicle). Significantly, in the month that elapsed after Mr. Luken gave consent until the computer was actually forensically examined, Mr. Luken spoke to Agent Boone several times about other matters relating to the case, but never revoked his consent. Taking all these factors into consideration, I find that Mr. Luken's consent was voluntarily given.

**Scope of Consent**

■ Alternatively, Mr. Luken asserts that the written consent "formed no independent basis to justify the forensic examination of the hard drive because such a forensic evaluation exceed[ed] the scope of the 'consent' given by [him]." Defendant's Brief (Doc. 21), p. 15. The relevant question here is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). In other words, given the exchange which had occurred between Agent Boone and Mr. Luken before the consent was signed, was it reasonable for Agent Boone to understand he had permission to forensically examine the computer? Conversely, would it have been reasonable for Mr. Luken to believe he was giving permission for Agent Boone to simply power up the computer to see what he could see without the aid of any forensic or other specialized software? Agent Boone's hearing testimony was undisputed: he explained to Mr. Luken how he was going to examine the hard drive, and that he had software capable of finding deleted files, *before* he presented Luken with the written consent to search form. "So, when I put 'seize and view' on that, since that consent form was written after that explanation I assumed, as well as me believing, that that's what Mr. Luken assumed was going to happen." TR 41. Also, Mr. Luken called to speak with Boone several times after the computer was seized, and Boone explained he could not discuss Luken's options until after Luken's computer was forensically examined. There was no evidence presented that Luken ever expressed any dismay or surprise, or ever revoked his consent when Boone talked about the forensic examination. The forensic examination did not exceed the scope of Mr. Luken's consent to "seize and view" the computer.

**The Warrant to Search the Computer**

Mr. Luken asserts the Government's search is not validated by the warrant for

a variety of reasons. He asserts the search exceeded the ten day time limitation prescribed by the warrant, and did not comply with the substantive requirements of the warrant in any event.

**The Ten Day Time Limitation**

The warrant to search Mr. Luken's computer provides that it shall be executed within ten days of the date it was signed. EX 4. The warrant was signed on July 25, 2006. Agent Boone testified that within a few days of obtaining the search warrant, he removed the hard drive and sent it to Pierre for examination. TR 74. In his opinion, once the hard drive had been removed and sent to Pierre, the search had been executed. TR 76. The forensic examination was not completed until the end of August, when Agent Boone returned from his training session in Georgia.

 Assuming the ten day limitation applies to the time in which the computer should have been forensically examined rather than simply seized and sent away for examination, the question becomes whether the search is invalid because it was performed approximately three weeks late. This issue is one which has been previously addressed by this Court. (*See* Report and Recommendation. *United States v. Bamberg*, CR 05–40012). The ten day requirement contained in the warrant executed by the state court Magistrate Judge was a South Dakota statutory requirement. *See* SDCL 23A–35–4. In a federal prosecution, however, "we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards." *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir.1994) *cert. den.* 513 U.S. 878, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). Further, "a court must examine the legality of a search by state officers as if made by federal officers ... evidence seized by state officers in conformity with the Fourth Amendment

will not be suppressed in a federal prosecution because *state* law was violated." *Id.* (emphasis in original). The ultimate question, therefore, is whether the search was reasonable, measured by Fourth Amendment standards.

The Eighth Circuit has explained that

Generally, search warrants must be executed within ten days of being issued. This Court has stated that search warrants are to be executed promptly. Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for the delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of *whether probable cause still existed at the time the warrant was executed.* ... [O]ur review is limited to determining whether the officers were reasonable in their belief that probable cause still existed at the time the warrant was executed.

In determining whether probable cause dissipated over time, a court must evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought....

*United States v. Simpkins*, 914 F.2d 1054, 1058 (8th Cir.1990) *cert. den.* 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1081 (1991).

The federal equivalent of SDCL 23 A–35–4 is found in Fed.R.Crim.P. 41(e)(2)(A) (formerly Rule 41(c)). In the context of a nighttime search which violated the provisions of Rule 41(c), the Eighth Circuit has noted "suppression is not automatic if Rule 41(c)(1) is violated. Instead, we consider whether the defendant is prejudiced or reckless disregard of proper procedure is evident." *United States v. Berry*, 113 F.3d 121, 123 (8th Cir.1997). In this case, Agent Boone diligently tried to comply

with the requirements of the warrant by shipping the hard drive to Pierre for evaluation within a few days of the date the warrant was executed, and there has been no showing that the probable cause which existed when the warrant was issued dissipated before the forensic exam was completed. Likewise, there has been no showing the Defendant was prejudiced by the delay, or that Agent Boone recklessly disregarded proper procedure.

The case law on the subject is sparse, because it is a relatively new area of the law. Some guidance is offered, however, by other District Court decisions. *See e.g. United States v. Grimmett,* 2004 WL 3171788 (D.Kan.). In *Grimmett,* the Court rejected the defendant's suppression motion, noting:

> The court, however, does not find the failure to search the computer's hard drive and computer disks within the 96–hour period violative of the Fourth Amendment ... [T]he Court need only consider if the defendant's Fourth Amendment rights were violated, not whether state law was violated. ... This is because the exclusionary rule is only concerned with deterring federal Constitutional violations. ... The conduct of law enforcement officers in executing a search warrant is governed by the Fourth Amendment's mandate of reasonableness. The Fourth Amendment does not provide a specific time in which a computer may be subjected to a government forensic examination after it has been seized pursuant to a search warrant. The court finds that the Fourth Amendment requires only that the subsequent search of the computer be made within a reasonable time. The court believes that it is reasonable to conduct a search of a computer off-site, after the return of the warrant.

*See also United States v. Syphers,* 296 F.Supp.2d 50, 58 (D.N.H.2003) (defendant's motion to suppress search of computer contents denied when search was completed seven months after seizure because time frame was not unreasonable and state did not "overstep any constitutional boundaries."); *United States v. Hernandez,* 183 F.Supp.2d 468, 480 (D.Puerto Rico 2002) (one and one half month delay in examination of computer and disks did not mandate suppression of evidence because delay was "reasonable" under the circumstances). For these reasons, I find search was reasonable under the Fourth Amendment even if the ten day time limitation was exceeded. The search of Mr. Luken's computer, therefore, was permissible and properly conducted pursuant to the warrant.

### Permission to Search for "Contraband" versus "Evidence"

 Finally, Mr. Luken asserts the forensic evaluation of his computer was not permitted by the terms of the search warrant because the warrant (and the supporting affidavit) authorized a search for "contraband" but not "evidence" and the thumbnail images found on the hard drive constitute "evidence" but not "contraband."

The top half of the affidavit in support of the warrant (EX 3) requested a warrant to search (1) computer software including but not limited to hard disks and floppy disks containing computer programs, including but not limited to software data files, electronic mail files, software programs and files to receive or transmit photographs; and (2) Data contained on the hard drive within a Gateway computer bearing serial number 0026390265, to include images depicting minors engaged in sexually explicit conduct or exploitation of a minor, e mails containing transactions or communications pertaining to but not limited to purchasing

or obtaining data depicting minors engaged in sexually explicit conduct or exploitation of a minor.

The lower half of the affidavit requested the warrant be issued to search the Gateway computer for (1) contraband, the fruits of a crime, or things otherwise criminally possessed; and (2) property designed or intended for use in, or which is or has been used as the means of committing a criminal offense.

The State Court Magistrate Judge issued the warrant, and found there was probable cause to believe that (1) contraband, the fruits of a crime, or things otherwise criminally possessed; and (2) property designed or intended for use in or which has been used as the means of committing a criminal offense would be found in the Gateway computer. The Judge ordered Boone to search the Gateway computer for: (1) computer software including but not limited to hard disks and floppy disks containing computer programs, including but not limited to software data files, electronic mail files, software programs, and files to receive or transmit photographs; and (2) data contained on the hard drive within the Gateway computer bearing serial number 0026390265, to include images depicting minors engaged in sexually explicit conduct or exploitation of a minor, videos and video clips of minors engaged in sexually explicit conduct or exploitation of a minor, e mails containing transactions or communications pertaining to but not limited to purchasing or obtaining data depicting minors engaged in sexually explicit conduct or exploitation of a minor.

Luken asserts the thumbnail images found on the hard drive were not contraband, but merely evidence of previous possession of contraband. Therefore, he argues, the search exceeded the scope of the warrant. The argument fails for a couple of reasons.

First, Luken's argument is based upon the premise that because he was unaware of and/or unable to easily access the thumbnail images which remained on his computer hard drive, they were not "contraband" because he did not "possess" them and by implication, he did not violate the statute with which he is charged (18 U.S.C. § 2252A(a)5(B) and 18 U.S.C. § 2256(8)(A)—a question which is beyond the scope of this motion). This unique argument has never been addressed by the Eighth Circuit, but two Circuits which have addressed it have rejected it. *See United States v. Romm,* 455 F.3d 990, 998 (9th Cir.2006) (noting the child pornography statute defines visual depictions as data files which are *capable* of conversion into a viewable form, not data files that are immediately viewable); *United States v. Tucker,* 305 F.3d 1193 (10th Cir.2002).

Second, the warrant authorized the forensic examination for the files found on the hard drive regardless of whether the blank for "evidence" was checked. The warrant explicitly authorized Agent Boone to search for property "designed or intended for use in, or which as been used as the means of committing a criminal offense," and for "data contained on the hard drive ... within a Gateway computer bearing the serial number 0026390265 to include images depicting minors engaged in sexually explicit conduct or exploitation of a minor ..." The warrant, therefore, did not "fail altogether" to identify the things to be seized. *Groh v. Ramirez,* 540 U.S. 551, 557, 124 S.Ct. 1284, 1289, 157 L.Ed.2d 1068 (2004). The forensic examination for the deleted "thumbnail" files did not exceed the scope of the warrant.

### CONCLUSION

Mr. Luken's encounter with law enforcement officials on July 25, 2006 did not rise to the level of a Fourth Amendment sei-

zure. Likewise he was not in custody at any time on July 25th, so no *Miranda* warnings were required. Mr. Luken voluntarily consented to the search of his computer, and the search did not exceed the scope of his consent, nor of the warrant which was later obtained by Agent Boone. That the forensic examination was not conducted until after the ten day time limitation on the face of the warrant does not render the search unconstitutional. Finally, the forensic examination did not exceed the scope of the warrant. For all these reasons, it is respectfully recommended to the District Court that Defendant Luken's motion to suppress (Doc. 19) be **DENIED.**

### *NOTICE TO PARTIES*

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black,* 781 F.2d 665 (8th Cir.1986).